## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

IAN BRENNER,

               Petitioner,

      v.

MICHAEL OVERMEYER, *et al.*,

               Respondents.

CIVIL ACTION NO. 3:22-CV-00157

(MEHALCHICK, J.)

## MEMORANDUM

Petitioner Ian Brenner ("Brenner") filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 to challenge a judgment against him and conviction imposed by a jury in the Court of Common Pleas of York County, Pennsylvania ("Court of Common Pleas"). (Doc. 1). For the reasons set forth below, the Court will **DENY** Brenner's writ of habeas corpus. (Doc. 1).

## I. BACKGROUND AND PROCEDURAL HISTORY

The following factual background is taken from Brenner's state court records.[1] Brenner is currently serving a life sentence without the possibility of parole after being twice convicted of first-degree murder, attempted murder, aggravated assault, and bodily assault with a deadly weapon. *Com. v. Brenner*, 256 A.3d 38, 2021 WL 1978962, at *1 (Pa. Super. Ct. 2021). The Court of Common Pleas first convicted Brenner in September 2006. *Com. v. Brenner*, No. 2170CA2006, 2007 WL 6970101 (Pa.Com.Pl. Feb. 08, 2007). This conviction was later

---

[1]A federal habeas court may take judicial notice of state court records. *See Reynolds v. Ellingsworth*, 843 F.2d 712, 714 n.1 (3d Cir. 1988); *see also Minney v. Winstead*, 2013 WL 3279793, at *2 (W.D. Pa. June 27, 2013). Accordingly, in reviewing this petition, the Court takes judicial notice of the publicly available dockets of criminal and collateral post-conviction proceedings in the Court of Common Pleas of York County, the Pennsylvania Superior Court, and the Pennsylvania Supreme Court.

overturned by the Superior Court of Pennsylvania (the "Superior Court"), and Brenner was again tried and convicted by a jury in the Court of Common Pleas in August 2014. *Brenner,* 2021 WL 1978962, at *3. Brenner's convictions and this petition stem from an incident where Brenner allegedly fired a gun into a crowd outside of a bar, ten days after he was shot himself. *Brenner,* 2021 WL 1978962, at *1

The incidents leading to Brenner's arrest and eventual convictions are as follows: On October 9, 2005, an unidentified assailant shot Brenner in the arm and leg. *Brenner,* 2021 WL 1978962, at *1. A few days later, Apollonia Snyder-Johnson[2] ("Snyder-Johnson"), Brenner's acquaintance, who would subsequently testify against him, "overheard [Brenner] talking on a cellphone, stating that 'he was going to pop Supreme when he [saw] him.' During the conversation, [Brenner] was handling a firearm in his lap."[3] *Brenner,* 2021 WL 1978962, at *1 (citations omitted).

On October 19, 2005, a shooter fired shots outside of Allison's Bar in York, Pennsylvania. *Brenner,* 2021 WL 1978962, at *1. Bullets struck and killed Anna Witter ("Witter"), and also struck Anthony Zawadzinski ("Zawadzinski") and Alfonzo King ("King"), who both survived. *Brenner,* 2021 WL 1978962, at *1. The shooter also fired in the direction of Jeffrey Mable ("Mable"), who is known by the alias "Supreme." *Brenner,* 2021 WL 1978962, at *1. Detective Anthony Fetrow ("Fetrow"), the lead detective assigned to Brenner's case, arrived at the scene to investigate, and recalls Tina Ashley ("Ashley"), who

---

[2] Snyder-Johnson is referred to as "Apollonia Snyder" by the PCRA courts and Apollonia Snyder-Johnson by Brenner. (Doc. 1, ¶ 92; Doc. 1-3, at 14). The Court will refer to her as "Snyder-Johnson."

[3] While the Court of Common Pleas took this testimony as true, the habeas petition notes that Snyder-Johnson later recanted her testimony. (Doc. 1, ¶ 92).

was present during the shooting, "pointing to [Mable] and stating things like '[h]e knows who was shooting. They were shooting at him.'" (Doc. 1-3, at 3) (citations omitted).

The Police interviewed eyewitnesses shortly after the shooting. *Brenner*, 2021 WL 1978962, at *1. Daniek Burns ("Burns") identified Brenner as the shooter and described the shooter's appearance as matching Brenner's. *Brenner*, 2021 WL 1978962, at *1. After the shooting, Burns had fled the York area but was later picked up on a material witness warrant. *Brenner*, 2021 WL 1978962, at *11. Other witnesses did not identify Brenner as the shooter, stating that they could not identify the shooter due to the poor lighting and the shooter's hoodie. *Brenner*, 2021 WL 1978962, at *1. Ashley stated that Brenner was not the shooter. *Brenner*, 2021 WL 1978962, at *1. Ashley and Lloyd Valcarcel ("Valcarcel") both described the shooter as thinner than Brenner and with a different complexion than Brenner. (Doc. 1-3, at 16, 18).

Based on their investigation, the police issued a warrant for Brenner's arrest, and Brenner turned himself in six days after the shooting. *Brenner*, 2021 WL 1978962, at *2. After his arrest, the police confiscated Brenner's "black Jordan sneakers, belt, and blue jeans" and "submitted [them] [to R.J. Lee Group, a forensics lab,] for forensic testing." *Brenner*, 2021 WL 1978962, at *2. A.J. Schwoeble ("Schwoeble"), a forensics expert who worked for R.J. Lee Group, examined these clothing items and issued a report on his findings. (Doc. 1-3, at 87). According to Allison Murtha ("Murtha"), another forensics expert from R.J. Lee Group who later reexamined Schwoeble's report to generate her own report, the belt was found to have a large population of gunshot residue. (Doc. 1-3, at 7-10). Brenner's belt also had markings consistent with something rubbing against it regularly. *Brenner*, 2021 WL 1978962, at *2. The police later confiscated the black hoodie Brenner was wearing when arrested and

separately submitted it to R.J. Lee Group and Schwoeble for forensic testing. *Brenner*, 2021 WL 1978962, at *2. This hoodie had less clear evidence of gunshot residue because it had fewer particles than the other clothing. (Doc. 1-3, at 7-10).

Prior to Brenner being tried in state court, the United States Attorney's Office empaneled a grand jury to pursue federal charges against Brenner. *Brenner*, 2021 WL 1978962, at *2. The United States Attorney's Office called Fetrow to testify, and he was asked about Burns and his identification of Brenner as the shooter. *Brenner*, 2021 WL 1978962, at *11. Fetrow told the grand jury that Burns was on the run at the time of the grand jury proceedings. *Brenner*, 2021 WL 1978962, at *11. Fetrow speculated that Burns disappeared after the shooting either because he was afraid of Brenner or because the police found a small amount of illegal drugs on Burns shortly after the shooting. *Brenner*, 2021 WL 1978962, at *11. Ultimately, the United States Attorney's Office determined that Brenner's case was more appropriate in state court, and state prosecutors pursued charges against Brenner. *Brenner*, 2021 WL 1978962, at *2.

Brenner was tried in the Court of Common Pleas in September 2006. *Brenner*, 2007 WL 6970101 at *1. Amongst other witnesses, the prosecution called Burns, who identified Brenner as the shooter. *Brenner*, 2021 WL 1978962, at *3. Burns was cross-examined by Brenner's trial counsel, Attorney Mark Keenheel ("Attorney Keenheel"). *Brenner*, 2021 WL 1978962, at *6. Attorney Keenheel attempted to discredit Burns's identification of Brenner by cross-examining Burns on his criminal history. *Brenner*, 2021 WL 1978962, at *11. Burns admitted to being a "career criminal" and told the jury about his prior criminal convictions and charges. *Brenner*, 2021 WL 1978962, at *11. Burns also conceded that the police could have arrested him on the night of the shooting because he was smoking marijuana and

wearing a bulletproof vest. *Brenner*, 2021 WL 1978962, at *11. The prosecution's other evidence included the testimony of Charles Maner ("Maner"), an inmate who was incarcerated with Brenner at the York County Prison, who testified that Brenner had discussed the shooting with him, and the testimony of an Assistant United States Attorney who testified regarding the federal grand jury empaneled against Brenner. *Brenner*, 2021 WL 1978962, at *2-3. Brenner's defense relied on the testimony of Tawanna Chavis ("Chavis"), who testified that Brenner was with her at her house during the shooting. *Brenner*, 2021 WL 1978962, at *2.

At the conclusion of the trial, a jury "convicted [Brenner] of the first-degree murder of Anna Witter, aggravated assault—serious bodily injury of Alfonzo King, aggravated assault—bodily injury with a deadly weapon of Anthony Zawadzinski, and the attempted homicide of Jeffrey Mable." *Brenner*, 2021 WL 1978962, at *2. The Court of Common Pleas "sentenced [Brenner] to serve life imprisonment without the possibility of parole ('LWOP'), plus a consecutive term of five to ten years." *Brenner*, 2021 WL 1978962, at *2. In 2013, the Superior Court reversed Brenner's conviction based on ineffective assistance of counsel after Brenner filed a Post Conviction Relief Act ("PCRA") petition. *Brenner*, 2021 WL 1978962, at *2. The court found Attorney Keenheel's assistance of counsel ineffective because he failed to discuss the possibility of calling character witnesses with Brenner. *Brenner*, 2021 WL 1978962, at *2.

After his first conviction was overturned, the prosecution again tried Brenner before the Court of Common Pleas in August 2014. *Brenner*, 2021 WL 1978962, at *3. In this trial, he was represented by Attorney Joseph Sembrot ("Attorney Sembrot"). *Brenner*, 2021 WL 1978962, at *3. The prosecution again relied on Burns's identification of Brenner as the

shooter; however, Burns had passed away before the second trial. *Brenner*, 2021 WL 1978962, at *2. As a result, the prosecution introduced Burns's previous testimony from the first trial. *Brenner*, 2021 WL 1978962, at *3. Attorney Sembrot objected to the introduction of this testimony because he could not cross-examine Burns. *Brenner*, 2021 WL 1978962, at *3. The Court of Common Pleas overruled this objection, finding that Brenner had a fair opportunity to cross-examine Burns in the previous trial. *Brenner*, 2021 WL 1978962, at *3. Burns's prior testimony was admitted. *Brenner*, 2021 WL 1978962, at *3.

The prosecution also relied on the testimony of Fetrow during the second trial. *Brenner*, 2021 WL 1978962, at *3. Fetrow testified that an exasperated Ashley pointed to Mable and identified him as the shooter's target. (Doc. 1-3, at 39-40). The court admitted this identification as an excited utterance. (Doc. 1-3, at 40). The prosecution further relied on Schwoebel and Murtha's expert reports on the gunpowder residue found on Brenner's clothing. *Brenner*, 2021 WL 1978962, at *8. Schwoebel did not testify during Brenner's first trial and was unavailable during the second. *Brenner*, 2021 WL 1978962, at *9. Murtha testified as an expert on gunshot residue forensics at the second trial. *Brenner*, 2021 WL 1978962, at *8-9. The prosecution further relied on the testimony of Snyder-Johnson, who testified that she heard Brenner say he was going to "pop Supreme [aka Mable]." *Brenner*, 2021 WL 1978962, at *14.

Brenner's defense in his second trial relied on the testimony of eyewitnesses to the shooting who contradicted Burns's identification of Brenner as the shooter and suggested Brenner could not have been the shooter. *Brenner*, 2021 WL 1978962, at *3. As part of this effort, Brenner "called three fact witnesses in an attempt to discredit Daniek Burns's identification of [Brenner] as the shooter." *Brenner*, 2021 WL 1978962, at *3. These witnesses

were standing near Burns at the time of the shooting and testified that they were not able to accurately identify the shooter beyond identifying the shooter's general physical characteristics. *Brenner*, 2021 WL 1978962, at *3, 7. Brenner also called Ashley who testified that Brenner could not have been the shooter because the shooter had a different complexion and a slimmer build than Brenner. (Doc. 1-1, at 16). Ashley also testified that she had not identified Mable as the shooter's target but rather told officers that the shooter must have been targeting a group of four people that included Mable. (Doc. 1-3, at 50). Brenner also called Valcarcel who testified that the shooter was slimmer than Brenner and was not wearing all black shoes like the ones confiscated from Brenner. (Doc. 1-3, at 19).

During its closing statements, the prosecution bolstered its own witnesses and undermined Brenner's. *Brenner*, 2021 WL 1978962, at *15. The prosecution attempted to bolster Snyder-Johnson's testimony by stating Snyder-Johnson was nervous about testifying because she was "facing a guy who's now on trial for a murder that she knows did it." *Brenner*, 2021 WL 1978962, at *15 The prosecution further attempted to bolster Snyder-Johnson's testimony by stating she volunteered Brenner's name to the police. *Brenner*, 2021 WL 1978962, at *15. The prosecution tried to undermine Ashley's testimony in their closing arguments by contradicting her factual account of the shooting. *Brenner*, 2021 WL 1978962, at *15. The prosecution also attempted to discredit Valcarel's testimony by stating that he "couldn't tell the truth if his life depended on it." *Brenner*, 2021 WL 1978962, at *15. Finally, the prosecution told the jury that Brenner's "conduct was the direct cause of the death of three innocent people[. . . ][Brenner] is about as cold a killer as there exists." *Brenner*, 2021 WL 1978962, at *15.

At the conclusion of the second trial, Appellant was again convicted of first-degree murder, attempted murder, aggravated assault—serious bodily injury, and aggravated assault—deadly weapon. *Brenner*, 2021 WL 1978962, at *3. The Court of Common Pleas sentenced Brenner to life imprisonment without the possibility of parole plus a consecutive five to ten years of imprisonment, which was the same sentence he received after his first trial. *Brenner*, 2021 WL 1978962, at *3. Brenner appealed his conviction to the Superior Court, which affirmed his conviction on August 24, 2016. *Brenner*, 2021 WL 1978962, at *3. On January 31, 2017, the Pennsylvania Supreme Court denied Brenner's Petition for Allowance of Appeal. *Com. v. Brenner*, 641 Pa. 67, 68 (2017).

Brenner raised the same ineffective assistance of counsel claims he raises here in a timely filed PCRA petition, which was denied by the Court of Common Pleas on March 19, 2020, after two days of evidentiary hearings. (Doc. 1-3). On May 18, 2021, the Superior Court affirmed the Court of Common Pleas's denial of Brenner's PCRA petition. *Brenner*, 2021 WL 1978962, at *3. The Pennsylvania Supreme Court denied Brenner's Petition for Allowance of Appeal on December 1, 2021. *Com. v. Brenner*, 268 A.3d 387 (Pa. 2021).

Brenner filed the instant Petition for Writ of Habeas Corpus on December 6, 2021. (Doc. 1). On October 28, 2022, Respondents Michael Overmeyer, then-Attorney General Josh Shapiro, and the District Attorney of York County, Pennsylvania, filed a Response to Petition for Habeas Corpus. (Doc. 20). On November 4, 2024, Brenner filed a Brief in Support of Habeas Petition/Response to Commonwealth Answer. (Doc. 21). On October 3, 2023, Chief Magistrate Judge Daryl F. Bloom issued an order denying writ of habeas corpus. (Doc. 24). Judge Bloom later vacated the order. (Doc. 37). This case was reassigned to the undersigned on April 24, 2025.

II. **Habeas Claims Presented for Federal Review**

Brenner presents the following claims for habeas relief:

- Claim One: Attorney Sembrot was ineffective in failing to present expert testimony on the fallibility of eyewitness identifications. (Doc. 1, ¶¶ 99, 105-57).

- Claim Two: Attorney Sembrot was ineffective for failing to present evidence that Attorney Keenheel was so ineffective in cross-examining Burns during the first trial that Brenner's Sixth Amendment Confrontation Clause rights were violated by the introduction of Burns's prior testimony at the second trial. (Doc. 1, ¶¶ 99, 158-97).

- Claim Three: Attorney Sembrot was ineffective for failing to adequately cross-examine Fetrow. (Doc. 1, ¶¶ 99, 198-220).

- Claim Four: Attorney Sembrot was ineffective in failing to object to the admission of Schwoeble and Murtha's reports and Murtha's expert testimony. (Doc. 1, ¶¶ 99, 221-73).

- Claim Five: Attorney Sembrot was ineffective in failing to object to various statements during closing arguments, which constituted prosecutorial misconduct. (Doc. 1, ¶¶ 99, 274-301).

- Claim Six: Attorney Sembrot was ineffective in failing to present evidence that Brenner had legally purchased firearms, was licensed to carry firearms, and had another sweatshirt, not alleged to have been worn at the crime scene, which had similar particles to those found on the sweatshirt presented at trial. (Doc. 1, ¶¶ 99, 302-45).

- Claim Seven: Attorney Sembrot was ineffective in failing to introduce photographic evidence demonstrating the poor lighting conditions at the crime scene. (Doc. 1, ¶¶ 99, 346-59).

- Claim Eight: The cumulative errors at trial were so prejudicial that they deprived Brenner of his right to a fair trial. (Doc. 1, ¶¶ 99, 360-78).

III. **Legal Standards**

The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). A habeas corpus petition pursuant to § 2254 is the

proper mechanism for a prisoner to challenge the "fact or duration" of his confinement. *Preiser v. Rodriguez*, 411 U.S. 475, 498-99 (1973). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Rather, federal habeas review is restricted to claims based "on the ground that [petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *see also Estelle*, 502 U.S. at 68.

A.    EXHAUSTION AND PROCEDURAL DEFAULT

A habeas petitioner must exhaust state court remedies before obtaining habeas relief. 28 U.S.C. § 2254(b)(1)(A). The traditional way to exhaust state court remedies in Pennsylvania was to fairly present a claim to the trial court, the Pennsylvania Superior Court, and the Pennsylvania Supreme Court. *See Evans v. Court of Common Pleas, Delaware County*, 959 F.2d 1227, 1230 (3d Cir. 1992). However, in light of the Pennsylvania Supreme Court Order No. 218, issued May 9, 2000 ("Order No. 218"), it is no longer necessary for Pennsylvania inmates to seek allocatur from the Pennsylvania Supreme Court in order to exhaust state remedies under 28 U.S.C. § 2254(c). *See Lambert v. Blackwell*, 387 F.3d 210, 233-34 (3d Cir. 2004) ("We now hold that Order No. 218 renders review from the Pennsylvania Supreme Court 'unavailable' for purposes of exhausting state court remedies under § 2254(c).").[4] The habeas petitioner has the burden of proving exhaustion. *Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997).

---

[4]In May 2000, the Pennsylvania Supreme Court issued Order No. 218, rendering review from the Pennsylvania Supreme Court "unavailable" for purposes of exhausting state court remedies for federal habeas petitions under 28 U.S.C. § 2254(c). *Lambert*, 387 F.3d at 233 (interpreting *In re: Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, No. 218 Judicial Administration Docket No. 1 (Pa. May 9, 2000) ("Order No. 218")). This means that, for purposes of federal habeas review under § 2254, a person in Pennsylvania custody

A petitioner's failure to exhaust his state remedies may be excused in limited circumstances where exhaustion would be futile. *Lambert*, 134 F.3d at 518-19. Where such futility arises from a procedural bar to relief in state court, the claim is subject to the rule of procedural default. *See Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). In addition, if the state court does not address the merits of a claim because the petitioner failed to comply with the state's procedural rules in presenting the claim, it is also procedurally defaulted. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

If a claim is found defaulted, the federal court may address it only if the petitioner establishes cause for the default and prejudice resulting therefrom, or that a failure to consider the claim will result in a fundamental miscarriage of justice. *Werts*, 228 F.3d at 192. To meet the "cause" requirement to excuse a procedural default, a petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Werts*, 228 F.3d at 192-93 (quoting and citing *Murray v. Carrier*, 477 U.S. 478, 488-89 (1986)). Additionally, the United States Supreme Court carved out a "narrow exception" to procedural default in *Martinez v. Ryan*, 566 U.S. 1 (2010). *Martinez* holds that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." 566 U.S. at 9. *Martinez* also recognizes that a finding of cause and prejudice to excuse procedural default "does not entitle the prisoner to habeas relief. It merely allows a federal court to consider the merits of a claim that otherwise would have been procedurally defaulted." 566 U.S. at 17.

---

"need not seek review from the Pennsylvania Supreme Court" in order to have exhausted state remedies and seek federal habeas review. *Lambert*, 387 F.3d at 210.

To successfully invoke the *Martinez* exception, a petitioner must establish: (1) that the underlying, otherwise defaulted claim of ineffective assistance of trial counsel is "substantial," meaning that it has "some merit"; and (2) that the petitioner had "no counsel" or "ineffective" counsel during the initial phase of state collateral review. 566 U.S. at 14. Whether a claim is "substantial" under *Martinez* is "analogous to the substantiality requirement for a certificate of appealability." *Cox v. Horn*, 757 F.3d 113, 119 (3d Cir. 2014) (citing *Martinez*, 566 U.S. at 14). "Thus, the question, for *Martinez* purposes, is merely whether 'reasonable jurists could debate' that [a petitioner's ineffective-assistance-of-trial-counsel] claim has merit, or whether the claim is 'adequate to deserve encouragement to proceed further.'" *Preston v. Superintendent Graterford SCI*, 902 F.3d 365, 377 (3d Cir. 2018) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003)).

The *Martinez* Court cautioned that its holding did not apply to counsel's error in other kinds of proceedings, such as "appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts." 566 U.S. at 16. Its "equitable ruling" was designed to reflect the "importance of the right to effective assistance of counsel." *Martinez*, 566 U.S. at 16. In order to establish such "cause," a petitioner must show that the state courts did not appoint counsel during the initial-review collateral proceeding for a claim of ineffective assistance at trial, or where counsel was appointed, that counsel was ineffective under the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Martinez*, 566 U.S. at 14. Further, *Martinez* does not excuse the non-cognizablility of a petitioner's PCRA counsel ineffectiveness claims. 566 U.S. at 14. Under *Martinez*, only the procedural default of an underlying claim may be excused, and that is if the underlying claims allege ineffectiveness of trial counsel. 566 U.S. at 14.

B.    MERITS STANDARD

Once a court has determined that the exhaustion requirement is met and, therefore, that review on the merits of the issues presented in a habeas petition is warranted, the scope of that review is set forth in 28 U.S.C. § 2254(d). Section 2254(d) provides, in pertinent part, that an application for a writ of habeas corpus premised on a claim previously adjudicated on the merits in state court shall not be granted unless:

(1) [the decision] was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) [the decision] was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). To establish that the decision was contrary to federal law "it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court precedent requires the contrary outcome." *Matteo v. Superintendent*, 171 F.3d 877, 888 (3d Cir. 1999). Similarly, a federal court will only find a state court decision to be an unreasonable application of federal law if the decision, "evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent." *Matteo*, 171 F.3d at 888.

Further, under 28 U.S.C. § 2254(e)(1), a federal court is required to presume that a state court's findings of fact are correct. A petitioner may only rebut this presumption with clear and convincing evidence of the state court's error. *Miller-El*, 537 U.S. at 341 (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions); *see also Matteo*, 171 F.3d at 888; *see also Thomas v. Varner*, 428 F.3d 492, 497-98 (3d Cir. 2005). This

presumption of correctness applies to both explicit and implicit findings of fact. *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000). Consequently, a habeas petitioner "must clear a high hurdle before a federal court will set aside any of the state court's factual findings." *Mastracchio v. Vose*, 274 F.3d 590, 597-98 (1st Cir. 2001).

Like the "unreasonable application" prong of paragraph (1), a factual determination should be adjudged "unreasonable" under paragraph (2) only if the court finds that a rational jurist could not reach the same finding on the basis of the evidence in the record. 28 U.S.C. § 2254(d)(2); *see also Porter v. Horn*, 276 F. Supp. 2d 278, 296 (E.D. Pa. 2003); *see also Torres v. Prunty*, 223 F.3d 1103, 1107-08 (9th Cir. 2000); *cf. Jackson v. Virginia*, 443 U.S. 307, 316 (1979). "This provision essentially requires the district court to step into the shoes of an appellate tribunal, examining the record below to ascertain whether sufficient evidence existed to support the findings of fact material to the conviction." *Breighner v. Chesney*, 301 F. Supp. 2d 354, 364 (M.D. Pa. 2004) (citing 28 U.S.C. § 2254(d)(2) and (f)[5]). Mere disagreement with an inferential leap or credibility judgment of the state court is insufficient to permit relief. *Porter*, 276 F. Supp. 2d at 296; *see also Williams v. Taylor*, 529 U.S. 362, 408-09 (2000); *see also Hurtado v. Tucker*, 245 F.3d 7, 16 (1st Cir. 2001). Only when the finding lacks evidentiary support in the state court record or is plainly controverted by evidence therein should the federal habeas court overturn a state court's factual determination. *Porter*, 276 F. Supp. 2d at 296; *see also Williams*, 529 U.S. at 408-09.

---

[5] "If the applicant challenges the sufficiency of the evidence adduced in such State court proceeding to support the State court's determination of a factual issue made therein, the applicant, if able, shall produce that part of the record pertinent to a determination of the sufficiency of the evidence to support such determination." 28 U.S.C. § 2254(f).

C.    INEFFECTIVE ASSISTANCE OF COUNSEL STANDARD

The Sixth Amendment right to counsel is the right to the effective assistance of counsel. *Strickland*, 466 U.S. at 686. This right to effective assistance of counsel also extends to the first appeal. *Lewis v. Johnson*, 359 F.3d 646, 656 (3d Cir. 2004). In *Strickland v. Washington*, the Supreme Court articulated a two-prong test in assessing whether a petitioner has been denied the effective assistance of counsel. 466 U.S. at 687-88. A petitioner must demonstrate: (1) that his counsel's representation "fell below an objective standard of reasonableness" and (2) that such defective performance caused the petitioner prejudice. *See Strickland*, 466 U.S. at 687-88.

In evaluating the first prong of the *Strickland* test, the court must be "highly deferential" toward counsel's conduct. 466 U.S. at 689. There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689 (stating "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable"). "*Strickland* and its progeny make clear that counsel's strategic choices will not be second-guessed by post-hoc determinations that a different trial strategy would have fared better." *Rolan v. Vaughn*, 445 F.3d 671, 681-82 (3d Cir. 2006) (citing *Strickland*, 466 U.S. at 689). Notably, courts will not deem counsel ineffective for failing to raise a meritless argument. *Strickland*, 466 U.S. at 691; *see also United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999).

To satisfy the prejudice prong, the petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would

have been different. *See Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Moreover, the petitioner must show that he or she had a reasonable likelihood of prevailing on the motion at issue, and, having prevailed on the motion, it was also reasonably likely that the result of the trial would have been different. *See Thomas*, 428 F.3d at 502.

To prevail on a claim for ineffective assistance of counsel, a petitioner must satisfy both prongs of the *Strickland* test. *Carpenter v. Vaughn*, 296 F.3d 138, 149 (3d Cir. 2002). The inquiry may begin with either the deficient performance or prejudice prong, and the Court is not required to consider the second prong of the test if the petitioner is unable to satisfy the first one. *Strickland*, 466 U.S. at 697.

## IV.  DISCUSSION

### A.  THE PCRA COURTS REASONABLY DETERMINED COUNSEL WAS NOT INEFFECTIVE IN FAILING TO INTRODUCE EXPERT TESTIMONY ON EYEWITNESS IDENTIFICATIONS.

Brenner's first claim for habeas relief asserts that Attorney Sembrot was ineffective in failing to present expert testimony on the fallibility of eyewitness identification. (Doc. 1, ¶¶ 99, 105-57). Brenner raised this issue in his PCRA petition[6] and called Dr. Dery Strange ("Strange"), an expert on eyewitness identifications, to testify on the fallibility of eyewitness identifications during a PCRA hearing before the Court of Common Pleas. (Doc. 1-1, at 25;

---

[6] The Court notes that Brenner has properly raised each of his habeas claims through a PCRA petition and thus all of Brenner's claims for relief are exhausted. (Doc. 1-1). "In considering a § 2254 petition, we review the 'last reasoned decision' of the state courts on the petitioner's claims." *Simmons v. Beard*, 590 F.3d 223, 231-32 (3d Cir. 2009) (citing *Bond v. Beard*, 539 F.3d 256, 289-90 (3d Cir. 2008)). Thus, "[w]e review the appellate court decision, not the trial court decision, as long as the appellate court 'issued a judgment, with explanation, binding on the parties before it.'" *Burnside v. Wenerowicz*, 525 F. App'x 135, 138 (3d Cir. 2013) (not precedential). The Superior Court's opinion, issued on October 18, 2021, will be the primary reference point in addressing Brenner's claims. *Brenner*, 2021 WL 1978962, at *1.

Doc. 1-3, at 23). The Court of Common Pleas applied Pennsylvania's test for ineffective assistance of counsel which requires a PCRA petitioner show "1) the underlying ineffectiveness claim has arguable merit; 2) counsel's actions lacked any reasonable basis; and 3) counsel's actions resulted in prejudice to the petitioner." (Doc. 1-3, at 22) (quoting *Com. v. Cox*, 603 Pa. 223, 242, 983 A.2d 666, 678 (2009)). The court found that while Brenner had met the first two prongs, he failed to show prejudice. (Doc. 1-3, at 23-25). The court conceded that calling an expert like Strange may have discredited Burns's identification of Brenner. (Doc. 1-3, at 23-24). The court also found, however, that Burns's credibility was already extensively undermined, and the additional undermining of his credibility would not have outweighed the other evidence against Brenner. (Doc. 1-3, at 23-26). The Superior Court affirmed, noting that Brenner called three separate witnesses who were standing near Burns at the time of the shooting, and all three testified that they could not identify the shooter. *Brenner*, 2021 WL 1978962, at *8. One of these witnesses testified that Burns himself had told him Burns couldn't identify the shooter. *Brenner*, 2021 WL 1978962, at *8. Based on this and the other evidence against Brenner, the Superior Court found the Court of Common Pleas did not abuse its discretion in finding a lack of prejudice. *Brenner*, 2021 WL 1978962, at *8.

Here, the Court finds that PCRA courts' opinions are not unreasonable applications of clearly established federal law or unreasonable determinations of fact. (Doc. 1-3, at 23-26); *Brenner*, 2021 WL 1978962, at *7-8. As noted by both Brenner and the PCRA courts, expert testimony on the fallibility of eyewitness identifications is admissible in Pennsylvania. *Com. v. Walker*, 625 Pa. 450 (2014). However, the decision to call an expert witness is generally not compulsory and thus not subject to ineffective assistance of counsel challenges. *See Hinton v. Alabama*, 571 U.S. 263, 275 (2014) (stating "[t]he selection of an expert witness is a

paradigmatic example of the type of 'strategic choic[e]' that, when made 'after thorough investigation of [the] law and facts,' is 'virtually unchallengeable.'" (quoting *Strickland*, 466 U.S. at 690); *see also Laird v. Sec'y, Pennsylvania Dep't of Corr.*, 129 F.4th 227, 244 (3d Cir. 2025) (stating the same). Further, Attorney Sembrot challenged Burns's credibility as a witness and undermined Burns's ability to see the shooter. *Brenner*, 2021 WL 1978962, at *8, 11. Where trial counsel effectively undermines a witness's credibility, a defendant is not prejudiced simply because trial counsel could have further undermined their credibility. *See United States v. Travillion,* 759 F.3d 281, 292 (3d Cir. 2014) (finding a petitioner was not prejudiced where trial counsel already undermined a witness's credibility even though counsel could have undermined credibility further); *see also Varner v. Houser,* No. 1:21-CV-00908, 2024 WL 3204472, at *12 (M.D. Pa. June 26, 2024) (finding a defendant was not prejudiced where "the jury was [already] aware that there was reason to question the accuracy of the witnesses' observations"). Thus, this Court finds the PCRA courts reasonably determined that Brenner was not prejudiced by Attorney Sembrot's failure to use an expert witness to further attack Burns's credibility. (Doc. 1-3, at 23-26); *Brenner,* 2021 WL 1978962, at *7-8. As such, Brenner's first claim for habeas relief is **DENIED**. (Doc. 1).

B.   The PCRA Courts reasonably determined Counsel was not ineffective regarding Burns's testimony.

Brenner's second claim for habeas relief concerns the performances of both Attorney Keenheel during Brenner's first trial and Attorney Sembrot during Brenner's second trial. (Doc. 1, ¶¶ 99, 158-97). According to Brenner, Attorney Keenheel was so ineffective in cross-examining Burns regarding his identification of Brenner as the shooter that Brenner never had a full and fair opportunity to cross-examine Burns. (Doc. 1, ¶¶ 158-97). Brenner argues that Attorney Keenheel was ineffective because he failed to confront Burns with grand jury

testimony from Fetrow, which showed that the York County police could have charged Burns with drug crimes prior to his testimony against Brenner but didn't. (Doc. 1, ¶¶ 158-97). According to Brenner, these uncharged drug offenses created an incentive for Burns to fabricate his testimony against Brenner. (Doc. 1, ¶¶ 158-97). Brenner avers that since Burns was not available for cross-examination during the second trial, his testimony from the first trial was inadmissible under the Sixth Amendment's Confrontation Clause due to Attorney Keenheel's ineffectiveness. (Doc. 1, ¶¶ 158-97). Brenner concludes that even though Attorney Sembrot moved to exclude Burns's prior testimony from the second trial, he was ineffective in doing so because he did not raise the issue of Fetrow's grand jury testimony and Burns's incentive to fabricate. (Doc. 1, ¶¶ 158-97).

The Court of Common Pleas found that Attorney Keenheel was not ineffective in his cross-examination of Burns during the first trial, so Attorney Sembrot was not ineffective in failing to exclude Burns's testimony during the second trial. (Doc. 1-3, at 26-37). According to the Court of Common Pleas, Attorney Keenheel had cross-examined Burns on his criminal history. (Doc. 1-3, at 30-31). During this cross-examination, Burns admitted that when he made a statement to the police regarding the shooting, there was an active warrant for his arrest but the police officers "told [him] to give this statement [regarding the shooting] and [he] would be able to go home." (Doc. 1-3, at 31). The Court of Common Pleas found that although testimony suggesting that the York County police could have charged Burns with drug crimes may have been additional evidence of Burns's incentive to fabricate, Attorney Keenheel presented evidence of Burn's incentive to fabricate and was not so ineffective that Brenner was deprived of his opportunity to cross examine Burns. (Doc. 1-3, at 31-36). The Superior Court affirmed, finding that Brenner failed to establish that Attorney Keenheel's

cross-examination of Burns was ineffective because Brenner did not challenge the effectiveness of Attorney Keenheel's cross-examination after his first trial. *Brenner*, 2021 WL 1978962, at \*5-6. Further, the Superior Court noted that Brenner failed to call Attorney Keenheel to testify as to his strategy at the PCRA evidentiary hearings and thus, Attorney Keenheel could not be found ineffective. *Brenner*, 2021 WL 1978962, at \*5-7. The Superior Court concluded that because Brenner failed to establish Attorney Keenheel was ineffective at his first trial, Attorney Sembrot could not be found ineffective for failing to exclude Burns's testimony at the second trial. *Brenner*, 2021 WL 1978962, at \*5-7.

Here, the Court again finds that the PCRA courts' conclusions are not unreasonable applications of clearly established federal law or unreasonable determinations of fact. (Doc. 1-3, at 26-37); *Brenner*, 2021 WL 1978962, at \*5-7. The Confrontation Clause provides that criminal defendants "enjoy the right. . . to be confronted with the witnesses against [them]." U.S. Const. amend. VI. "[T]estimonial hearsay from a now-unavailable declarant may be admitted against a defendant at a criminal trial [consistent with the Confrontation Clause] if the defendant had a prior opportunity to cross-examine him". *United States v. Paling*, 580 F. App'x 144, 148 (3d Cir. 2014). A defendant has the right to effective cross-examination under the Confrontation Clause, but not perfect cross-examination. *See Ross v. Dist. Att'y of the Cnty. of Allegheny,* 672 F.3d 198, 208 (3d Cir. 2012) (stating "[Defendant] had what the Confrontation Clause guaranteed— 'an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish'" (quoting *Kentucky v. Stincer*, 482 U.S. 730, 739 (1987)).

Beginning with Attorney Keenheel's effectiveness, Attorney Keenheel cross-examined Burns on his incentive to fabricate and impeached his credibility. (Doc. 1-3, at 31). Because

of this, Brenner "had what the Confrontation Clause guaranteed— 'an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" *Ross,* 672 F.3d at 208 (quoting *Stincer,* 482 U.S. at 739). Accordingly, it was reasonable for the PCRA courts to conclude that Attorney Keenheel was not so ineffective in cross-examining Burns that Brenner was deprived of his rights under the Confrontation Clause.[7] (Doc. 1-3, at 26-37); *Brenner,* 2021 WL 1978962, at *5-7.

Turning to Attorney Sembrot's effectiveness, the PCRA courts reasonably concluded that Attorney Sembrot was not ineffective for failing to further object to Burns's testimony. (Doc. 1-3, at 26-37); *Brenner,* 2021 WL 1978962, at *5-7. Counsel is not ineffective "based on an [his] failure to raise a meritless argument." *Sanders,* 165 F.3d at 253. Because Burns's testimony was admissible, Attorney Sembrot was not ineffective for failing to raise arguments to have it excluded. As such, Brenner's second claim for habeas corpus is **DENIED**. (Doc. 1).

---

[7] Brenner also argues that the Superior Court unreasonably applied *Strickland* "by treating the failure to call original trial counsel as a *per se* bar to PCRA relief." (Doc. 1, ¶¶ 192-93). The Court disagrees with this characterization of the Superior Court's decision. While the Superior Court did note that Brenner failed to call Attorney Keenheel during the PCRA evidentiary hearings, the court also noted that "[t]he burden of production and persuasion of a PCRA petition rests squarely on the petitioner's shoulders." *Brenner,* 2021 WL 1978962, at *7. The court found that Brenner failed to provide any evidence as to what Attorney Keenheel's strategy could be and thus failed to show ineffective assistance of counsel. *Brenner,* 2021 WL 1978962, at *7. This approach is not an unreasonable application of Supreme Court caselaw. *See Dunn v. Reeves,* 594 U.S. 731, 740 (2021) (denying an ineffective assistance of counsel claim where the petitioner failed to present evidence of trial counsel's information, considerations, and strategy). Accordingly, the Superior Court did not unreasonably apply clearly established federal law as determined by Supreme Court precedent. *Brenner,* 2021 WL 1978962, at *5-7.

C.    THE PCRA COURTS REASONABLY DETERMINED COUNSEL WAS NOT INEFFECTIVE IN CROSS-EXAMINING FETROW.

Brenner's third claim for habeas relief asserts that Attorney Sembrot was ineffective in his cross-examination of Fetrow, the lead detective assigned to Brenner's case, because he failed to cross-examine Fetrow regarding Burns's uncharged drug incident and the police's delay in obtaining Brenner's sweatshirt. (Doc. 1, ¶¶ 99, 198-220). The Court will address each issue in turn.

1.    **Brenner was not prejudiced by Attorney Sembrot's failure to cross-examine Fetrow regarding Burns's uncharged drug incident.**

Brenner first avers that Attorney Sembrot was ineffective in cross-examining Fetrow because he failed to question Fetrow regarding Fetrow's previous grand jury testimony stating Burns could have run from the police because York police officers found illegal drugs on him. (Doc. 1-1, ¶¶ 199-208). According to Brenner, this line of questioning was essential because it would have undermined Burns's identification of Brenner as the shooter. (Doc. 1, ¶¶ 199-208).

The Court of Common Pleas found that while Attorney Sembrot cross-examining Fetrow regarding the grand jury testimony would have raised doubts about Burns's credibility, this questioning would not have provided a substantially greater chance of success, and Brenner was not prejudiced. (Doc. 1-3, at 38). The court reasoned that the jury had already been informed of Burns's criminal history and incentive to fabricate, so there was "no substantially greater chance for success in repeating the same information that might well have drawn a challenge regarding cumulative evidence." (Doc. 1-3, at 38). Further, the court found that given the weight of the other evidence against Brenner, Brenner was not prejudiced by Attorney Sembrot's failure to further undermine Burns's credibility. (Doc. 1-3, at 38-39).

22

The Superior Court affirmed. *Brenner*, 2021 WL 1978962, at *10-11. The Superior Court agreed that Burns's credibility was already undermined, including with information about his incentive to fabricate. *Brenner*, 2021 WL 1978962, at *11. Further, the court noted that the uncharged drug incident Burns was allegedly on the run for occurred after Burns had already identified Brenner as the shooter, so it could not speak to his motive to fabricate his initial identification of Brenner as the shooter. *Brenner*, 2021 WL 1978962, at *11. Finally, the court noted that Fetrow also stated during his grand jury testimony that Burns may have been on the run because he was afraid of Brenner and "[s]uch testimony could have hurt [Brenner]." *Brenner*, 2021 WL 1978962, at *11.

Once more, the Court finds that the PCRA courts' opinions are not unreasonable applications of clearly established federal law or unreasonable determinations of fact. (Doc. 1-3, at 37-39); *Brenner*, 2021 WL 1978962, at *10-13. Reasonable jurists may conclude that where a witness's credibility was already effectively undermined during trial "the result would [not] have been different had [trial counsel] further attacked [a witness]'s credibility." *United States v. Green*, 493 F. Supp. 3d 296, 312 (M.D. Pa. 2020); *see also Varner*, 2024 WL 3204472, at *12 (finding a lack of prejudice where "the jury was [already] aware that there was reason to question the accuracy of the witnesses' observations"). Here, Burns's credibility was effectively undermined, and as such, the PCRA courts reasonably determined further attacks would not have made a difference. (Doc. 1-3, at 37-39); *Brenner*, 2021 WL 1978962, at *10-13. Accordingly, this claim for habeas relief is **DENIED**. (Doc. 1).

### 2. Brenner was not prejudiced by Attorney Sembrot's failure to cross-examine Fetrow regarding Brenner's clothing.

Brenner next asserts that Attorney Sembrot was ineffective in failing to cross-examine Fetrow regarding the police's delay in obtaining Brenner's sweatshirt and submitting it for

forensic testing.[8] (Doc. 1, ¶¶ 210-20). Brenner avers that the sweatshirt was not seized for several months after Brenner turned himself in, making contamination very likely. (Doc. 1, ¶¶ 210-20). Brenner cites various scholarly articles which suggest the sweatshirt and other clothing items could have been contaminated. (Doc. 1, ¶¶ 213-15). Brenner argues that Attorney Sembrot was ineffective for failing to confront Fetrow with these articles and the risk of contamination. (Doc. 1, ¶¶ 213-15).

The Court of Common Pleas held that Brenner would not have had a significantly greater chance of success if the jury had been made aware of the scholarly articles Brenner cites or if Attorney Sembrot had cross-examined Fetrow regarding the sweatshirt and risk of contamination on the clothing items. (Doc. 1-3, at 42). The court found that the jury was already aware that there was little evidence of gunshot residue on the sweatshirt and that most of the gunshot residue was located on the other clothing items. (Doc. 1-3, at 42). The court further noted that the jury was aware of the possibility of contamination, and Fetrow testified that the police took precautions to avoid contaminating the other clothing items. (Doc. 1-3, at 42). Finally, the court pointed to portions of Murtha's expert testimony on the forensic evidence, which informed the jury that temporal delays in collecting forensic evidence can increase the risk of contamination. (Doc. 1-3, at 42). The court concluded that given this discussion of the risks of contamination and the lesser value of the sweatshirt as evidence, Brenner cross-examining Fetrow further would not have substantially increased Brenner's

---

[8] Brenner also suggests that Attorney Sembrot was ineffective for not confronting "the gun shot residue expert" regarding the time it took Fetrow to "recover the sweatshirt and other items." (Doc. 1, ¶ 216). This assertion does not appear in Brenner's PCRA petition. (Doc. 1-1). However, Brenner's PCRA petition suggests Murtha, Defendant's gunshot residue expert, was questioned regarding potential contamination. (Doc. 1-1, at 20).

likelihood of success. (Doc. 1-3, at 42). The court also concluded that Brenner was not prejudiced. (Doc. 1-3, at 43).

The Superior Court affirmed, finding that the prosecution primarily relied on gunshot residue evidence from Brenner's other articles of clothing rather than the sweatshirt. *Brenner*, 2021 WL 1978962, at \*13. The court further noted that Murtha had testified that all of Brenner's clothing items had a contamination risk because Brenner had not been arrested until six days after the shooting. *Brenner*, 2021 WL 1978962, at \*13. Therefore, the jury was already aware of the risk of contamination even for the articles of clothing the prosecution primarily relied on. *Brenner*, 2021 WL 1978962, at \*13.

The Court once again finds that the PCRA courts' opinions are not unreasonable applications of clearly established federal law or unreasonable determinations of fact. (Doc. 1-3, at 41-43); *Brenner*, 2021 WL 1978962, at \*10-13. Habeas courts must defer to state court determinations that additional evidence of a proposition already presented at trial would not have substantially increased a petitioner's likelihood of success at trial. *See Brown v. Wenerowicz*, 663 F.3d 619, 634 (3d Cir. 2011) (reversing a district court's grant of habeas relief because the district court did not sufficiently defer to the state courts' determination that additional evidence supporting an alibi would not have substantially increased the petitioner's likelihood of success at trial). Here, the PCRA courts reasonably determined that the jury was already aware of both the risk of contamination and the minimal evidentiary value of the sweatshirt, so additional evidence was not substantially likely to change Brenner's likelihood of success at trial. *Brenner*, 2021 WL 1978962, at \*13. The Court must defer to this conclusion. *See Brown*, 663 F.3d at 634. Thus, Brenner's third claim for habeas relief is **DENIED**. (Doc. 1).

D.    THE PCRA COURTS REASONABLY DETERMINED COUNSEL WAS NOT
INEFFECTIVE REGARDING THE EXPERT REPORTS.

Brenner's fourth claim for habeas relief asserts that Attorney Sembrot was inefficient in failing to object to the admission of Schwoeble's expert report on the gunshot residue found on Brenner's clothing, Murtha's expert report on the same subject, and Murtha's expert testimony on gunshot residue forensics. (Doc. 1, ¶¶ 99, 221-73). According to Brenner, the admission of Schwoeble's report, which was created during the Police's investigation of Brenner, violated the Confrontation Clause because Schwoeble never testified at either trial, and thus Brenner never had the opportunity to cross-examine him. (Doc. 1, ¶¶ 225-26). Brenner further avers that Murtha's report, which was created eight years after Brenner's first trial, and her expert testimony were inadmissible under the Confrontation Clause because she relied on Schwoeble's inadmissible report. (Doc. 1, ¶¶ 268-69).

The Court of Common Pleas held that Schwoeble's expert report was inadmissible. (Doc. 1-3, at 91). Under the Confrontation Clause, a court may not admit out-of-court statements that are testimonial in nature against a criminal defendant unless the declarant is unavailable, and the defendant had an opportunity to cross-examine the declarant. *Crawford v. Washington,* 541 U.S. 36, 68 (2004). This applies to expert reports. *Bullcoming v. New Mexico,* 564 U.S. 647, 658 (2011). Further, the Supreme Court has held that a prosecutor cannot evade the Confrontation Clause by introducing "surrogate testimony" where a second expert merely repeats the findings and conclusions of a non-testifying expert. *Bullcoming,* 564 U.S. at 652. Applying this precedent, the Court of Common Pleas determined that Schwoeble's report was inadmissible because Schwoeble did not testify, and Brenner never had an opportunity to cross-examine him. (Doc. 1-3, at 91).

Despite this, the court relied on the Pennsylvania Supreme Court's decision in *Commonwealth v. Yohe* to determine that Murtha's report and testimony were admissible, and the admission of Schwoeble's report did not prejudice Brenner because it was cumulative of Murtha's report and testimony. (Doc. 1-3, at 93-95). According to the court, *Yohe* stands for the proposition that an expert may testify regarding data they themselves did not collect if the expert conducts an independent analysis of that data. [9] (Doc. 1-3, at 93-95) (citing *Com. v. Yohe*, 621 Pa. 527, 79 A.3d 520 (2013)). Although the Court of Common Pleas had some reservations, it ultimately concluded that Murtha was an "independent analyst" and Schwoeble's report was properly incorporated into Murtha's testimony. (Doc. 1-3, at 93-95). The Superior Court affirmed with no reservations. *Brenner*, 2021 WL 1978962, at *10. The Superior Court found that Murtha relied on the same raw data that Schwoeble relied on and formed an independent opinion. *Brenner*, 2021 WL 1978962, at *10. The court further reasoned that Attorney Sembrot was not ineffective in failing to object to Murtha's report and testimony because they were properly admitted. *Brenner*, 2021 WL 1978962, at *10. Finally, the court agreed that Brenner was not prejudiced by the admission of Schwoeble's report because it was merely cumulative of Murtha's testimony. *Brenner*, 2021 WL 1978962, at *10.

In line with previous findings, the Court finds that the PCRA courts' opinions are not unreasonable applications of clearly established federal law or unreasonable determinations

---

[9] Brenner argues that *Yohe* only applies where a testifying expert is a lab supervisor who performed an independent analysis of data collected by their subordinates. (Doc. 1, ¶¶ 237-45). According to Brenner, *Yohe* is inapplicable because Murtha was never Schwoeble's supervisor. (Doc. 1, ¶¶ 237-45). The PCRA courts did not distinguish *Yohe* in this way. (Doc. 1-3, at 93-95); *Brenner*, 2021 WL 1978962, at *10. "[A] state court's interpretation of state law . . . binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). Accordingly, this Court cannot second-guess the Superior Court's interpretation of *Yohe*. Instead, it may only consider whether the PCRA courts' application of *Yohe* is an unreasonable application of Supreme Court precedent. *Matteo*, 171 F.3d at 888.

of fact. (Doc. 1-3, at 87-95); *Brenner*, 2021 WL 1978962, at *8-10. Beginning with the reasonableness of the PCRA courts' application Confrontation Clause precedent, Brenner plausibly argues that the Supreme Court's decision in *Bullcoming v. New Mexico* prohibited the admission of Murtha's testimony because Murtha was not involved in the relevant forensics testing, Brenner could not question Schwoeble as to the integrity of the underlying data, and Murtha's analysis was not truly independent due to her reliance on Schwoeble's report. (Doc. 21, at 57-59) (citing *Bullcoming*, 564 U.S. at 652). However, a plausible argument is not sufficient under AEDPA and habeas relief is only permitted where "there is no possibility fair[-]minded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). Under this high standard, the Court finds that habeas relief is not warranted.

In *Bullcoming*, a non-testifying lab analyst analyzed a defendant's blood alcohol content. 564 U.S. at 653. This lab analyst drafted a report on his findings but did not testify at trial. *Bullcoming,* 564 U.S. at 653, 655. Instead, the prosecution introduced the report through a different lab technician who was not involved in testing or the drafting of the report. *Bullcoming,* 564 U.S. at 655. This witness did not prepare his own report or do his own analysis; he only parroted the report's findings. *Bullcoming,* 564 U.S. at 655. Here, the trial transcript shows Murtha testified as to a report she herself wrote and analyzed raw data from SEM machine printouts. (Doc. 20-8, at 165-71). Fair-minded jurists could disagree over the PCRA courts' determination that this case is distinguishable from *Bullcoming* due to Murtha drafting her own report and coming to independent conclusions. (Doc. 1-3, at 87-95); *Brenner,* 2021 WL 1978962, at *8-10. Accordingly, habeas relief cannot be granted on Brenner's claim

that the PCRA courts incorrectly applied *Bullcoming*. *See Harrington*, 562 U.S. at 102 (holding that habeas relief is not permitted where fair-minded jurists could disagree).

Next, the Court finds that the PCRA courts' decisions are not "based on an unreasonable determination of the facts." *Pierce v. Adm'r New Jersey State Prison*, 808 F. App'x 108, 111 (3d Cir. 2020) (nonprecedential). Brenner argues that the PCRA courts unreasonably determined that Schwoeble was just a manager who only analyzed raw data. (Doc. 21, at 59-61). The Court acknowledges that parts of Murtha's testimony suggest that Schwoeble did more than analyze raw data. (Doc. 20-8, 163, 171-172). However, the PCRA courts' decisions were based on a factual determination that Murtha created an independent report and came to her own independent conclusions. *Brenner*, 2021 WL 1978962, at *10. Excerpts from Murtha's testimony support this finding. (Doc. 20-8, at 165-171). This Court must defer to the PCRA courts' factual determinations where there is evidence in the record supporting them. *Porter*, 276 F. Supp. 2d at 296. Accordingly, the Court cannot grant habeas relief based on an unreasonable determination of fact. *See Porter*, 276 F. Supp. 2d at 296.

Finally, the Court finds that the PCRA courts did not unreasonably apply *Strickland*. (Doc. 1-3, at 87-95); *Brenner*, 2021 WL 1978962, at *8-10. Counsel is not ineffective where it fails to object to admissible evidence. *See Clark v. Ricci*, 285 F. App'x 933, 935 (3d Cir. 2008) (nonprecedential) (finding counsel was not ineffective for failing to object to evidence found admissible). Here, the PCRA courts reasonably determined that Attorney Sembrot was not ineffective in failing to object to Murtha's report and testimony because the courts concluded that the report and testimony were admissible. (Doc. 1-3, at 87-95); *Brenner*, 2021 WL 1978962, at *8-10. Further, courts may reasonably conclude a defendant was not prejudiced by the admission of cumulative evidence. *See Fogg v. Phelps,* 579 F. Supp. 2d 590, 610 (D. Del.

2008), *aff'd*, 414 F. App'x 420 (3d Cir. 2011) (stating "the court concludes that [inadmissible] statement was cumulative of the other properly [admitted evidence] during petitioner's trial. Consequently, the [Confrontation Clause] violation stemming from the admission of [the] statement constituted harmless error"). Even though Schwoeble's report was inadmissible, the PCRA courts were reasonable in determining that Schwoeble's report was cumulative evidence and thus its admission did not prejudice Brenner. (Doc. 1-3, at 87-95); *Brenner*, 2021 WL 1978962, at *8-10. Accordingly, Brenner's fourth claim for habeas relief is **DENIED**. (Doc. 1).

     E.    THE PCRA COURTS REASONABLY DETERMINED COUNSEL WAS NOT INEFFECTIVE IN FAILING TO INTRODUCE EVIDENCE OF LEGAL GUN OWNERSHIP.

Brenner's fifth claim for relief asserts that Attorney Sembrot was ineffective in failing to present evidence that Brenner was a legal gun owner and thus, the gunshot residue found on his clothes could have come from him legally firing his weapons. (Doc. 1, ¶¶ 99, 274-301). Brenner further argues that Attorney Sembrot was ineffective in failing to introduce evidence of a second sweatshirt owned by Brenner, which had nearly identical particles to the sweatshirt introduced at trial. (Doc. 1, ¶¶ 291-94). Brenner contends that the evidence of legal gun ownership and the fact that multiple hoodies had similar particles suggest the gunshot residue on Brenner's clothing was from legal instances of him firing his weapons. (Doc. 1, ¶¶ 294-301).

The Court of Common Pleas found that Attorney Sembrot had a reasonable basis for not introducing Brenner's gun ownership and his second sweatshirt. (Doc. 1-3, at 44). According to the court, Attorney Sembrot had considered introducing evidence of gun ownership but decided not to because he determined "plac[ing] a gun in Defendant's hands"

could increase the likelihood of a conviction. (Doc. 1-3, at 44). Further, Attorney Sembrot testified during the PCRA hearing that he had not considered introducing the second hoodie before the hearing but thought that introducing a second hoodie with evidence of gunpowder particles could "cut both ways." (Doc. 1-3, at 44-45). The court determined that Attorney Sembrot had a reasonable basis for choosing the strategy he did, and as such, he was not ineffective. (Doc. 1-3, at 44-45). The Superior Court affirmed and determined "Attorney Sembrot's decision was based upon a reasonable strategy to effectuate [Brenner]'s interests." *Brenner*, 2021 WL 1978962, at *13.

Again, the Court finds that the PCRA courts' opinions are not unreasonable applications of clearly established federal law or unreasonable determinations of fact. (Doc. 1-3, at 87-95); *Brenner*, 2021 WL 1978962, at *8-10. An attorney's decision not to present evidence for fear it may backfire is a strategic choice that is the type of decision that is "virtually unchallengeable" under *Strickland*. *Lesko v. Sec'y Pennsylvania Dep't of Corr.*, 34 F.4th 211, 242 (3d Cir. 2022) (finding decisions not to call certain witnesses for fear they may hurt the defendant are "[i]nformed, 'strategic choices'" that "'are virtually unchallengeable' [under *Strickland*.]" (quoting *Strickland*, 466 U.S. at 690)). Here, the PCRA courts reasonably determined that Attorney Sembrot's decision not to introduce evidence of gun ownership and a second sweatshirt was a strategic decision that was unchallengeable under *Strickland*. (Doc. 1-3, at 87-95); *Brenner*, 2021 WL 1978962, at *8-10. As such, Brenner's fifth claim for habeas relief is **DENIED**. (Doc. 1).

F.    THE PCRA COURTS REASONABLY DETERMINED COUNSEL WAS NOT INEFFECTIVE IN FAILING TO OBJECT TO CLOSING STATEMENTS.

Brenner's sixth claim for habeas relief asserts that Attorney Sembrot was ineffective for failing to object to the prosecution's closing arguments. (Doc. 1, ¶¶ 99, 302-45). Brenner

specifically objects to five alleged instances of prosecutorial misconduct during the prosecution's closing arguments. (Doc. 1, ¶¶ 302-45). Brenner also argues that the PCRA courts unreasonably assessed instances of prosecutorial misconduct in isolation when they should have assessed their collective effect. (Doc. 21, at 71-72). The Court will assess each issue in turn.

### 1. The prosecutor's statement that Snyder-Johnson was nervous was not prosecutorial misconduct.

Brenner first asserts that Attorney Sembrot was ineffective in failing to object to the prosecution's statement that Snyder-Johnson was nervous about testifying against Brenner because "[s]he's facing a guy who's now on trial for murder that she knows did it." (Doc. 1, ¶¶ 304-07). According to Brenner, there is no evidence that Snyder-Johnson believed Brenner was the shooter. (Doc. 1, ¶ 307).

The Court of Common Pleas found that this claim had no merit because the prosecution was permissibly asking the jury to infer that Snyder-Johnson knew Brenner was the shooter based on the evidence presented. (Doc. 1-3, at 59). The Court held that this was a permissible requested inference because Snyder-Johnson testified that she overheard Brenner state he was going to "pop" Mable, Mable was present during the shooting, Snyder-Johnson testified that she was testifying against Brenner because "it was the right thing to do," and Snyder-Johnson testified that she was nervous about testifying. (Doc. 1-3, at 59). Based on this, the PCRA courts concluded Attorney Sembrot was not ineffective because the objection was meritless. (Doc. 1-3, at 60). The Superior Court agreed. *Brenner*, 2021 WL 1978962, at *15.

Consistent with previous findings, the Court finds that the PCRA courts' opinions are not unreasonable applications of clearly established federal law or unreasonable

determinations of fact. (Doc. 1-3, at 58-60); *Brenner*, 2021 WL 1978962, at *15. "During summation, a prosecutor 'is entitled to considerable latitude' and may ask the jury to make 'any reasonable inferences that can be drawn from the evidence.'" *United States v. Elwell*, 515 F. App'x 155, 163 (3d Cir. 2013) (quoting *United States v. Werme*, 939 F.2d 108, 116 (3d Cir. 1991)). As noted by the Court of Common Pleas, there was evidence that Synder-Johnson was nervous about testifying and that she believed Brenner was guilty. (Doc. 1-3, at 59). Accordingly, the PCRA courts were reasonable in determining that the prosecutor was permitted to ask the jury to infer that Snyder-Johnson was nervous because she believed Brenner was the shooter. (Doc. 1-3, at 58-60); *Brenner*, 2021 WL 1978962, at *15. Because the PCRA courts reasonably concluded that any objection to the prosecution's statement was meritless, the PCRA courts were also reasonable in concluding Attorney Sembrot was not ineffective "based on [his] failure to raise a meritless argument." *Sanders*, 165 F.3d at 253. Accordingly, Brenner's request for habeas relief is **DENIED**. (Doc. 1).

### 2. The prosecutor's statement that Snyder-Johnson volunteered Brenner's name was not prosecutorial misconduct.

Brenner further asserts that Attorney Sembrot was ineffective for failing to object to the prosecution's statement that Snyder-Johnson volunteered Brenner's name while being questioned by Fetrow, the lead detective on Brenner's case. (Doc. 1, ¶¶ 308-13). Brenner avers that this statement was false because Fetrow had called Snyder-Johnson in for questioning to specifically ask about Brenner and because Snyder-Johnson had been an informant for Fetrow. (Doc. 1, ¶¶ 309-13).

The Court of Common Pleas found that Attorney Sembrot was not ineffective in failing to object to this statement. (Doc. 1-3, at 62-63). According to the court, a misstatement during closing arguments is not prosecutorial misconduct unless the misstatement creates

sufficient prejudice. (Doc. 1-3, at 60-63). The court further concluded that an attorney is not ineffective for failing to object to a misstatement during closing arguments that does not constitute prosecutorial misconduct. (Doc. 1-3, at 60-63). The court found that Brenner was not prejudiced by the prosecution stating Snyder-Johnson volunteered Brenner's name because Attorney Sembrot noted in his closing argument that Snyder-Johnson never came forward to the police, Fetrow testified on cross-examination that he was the one that approached Snyder-Johnson about Brenner, and the jury was instructed that closing arguments are not evidence. (Doc. 1-3, at 62-63). The court concluded that Attorney Sembrot was thus not ineffective because the misstatement was not prosecutorial misconduct. (Doc. 1-3, at 62-63). The Superior Court agreed, finding no indication that this "fleeting remark" was so prejudicial that "the jury could no longer render a fair verdict, particularly in light of the court's directive to disregard remarks that are not supported by the evidence." *Brenner*, 2021 WL 1978962, at *16.

The Court again finds that the PCRA courts' opinions are not unreasonable applications of clearly established federal law or unreasonable determinations of fact. (Doc. 1-3, at 60-63); *Brenner*, 2021 WL 1978962, at *16. Counsel is not ineffective for failing to object to a prosecutor's misstatement during closing arguments unless that misstatement is sufficiently prejudicial to constitute prosecutorial misconduct. *See Alexander v. Shannon*, 163 F. App'x 167, 173 (3d Cir. 2006) (nonprecedential) (stating "[petitioner] has not established the requisite prejudice [to establish prosecutorial misconduct], and he thus cannot show that counsel was ineffective for failing to object to the prosecutor's closing arguments"). A court may reasonably determine that a misstatement is insufficiently prejudicial where the jury was instructed that closing arguments are not evidence. *See Donnelly v. DeChristoforo*, 416 U.S. 637,

644 (1974) (finding a defendant was not sufficiently prejudiced by a misstatement of fact in closing arguments to constitute prosecutorial misconduct where the jury was instructed that closing arguments are not evidence). Here, the jury was instructed that closing arguments are not evidence. *Brenner*, 2021 WL 1978962, at *16. Therefore, the PCRA courts reasonably concluded that, given this instruction, Brenner failed to show the prosecution's misstatement was sufficiently prejudicial to constitute prosecutorial misconduct. (Doc. 1-3, at 60-63); *Brenner*, 2021 WL 1978962, at *16. The PCRA courts thus also reasonably concluded that Attorney Sembrot was not ineffective for failing to object to the misstatement. *See Alexander*, 163 F. App'x at 173 (finding counsel is not ineffective for failing to object to a misstatement that does not constitute prosecutorial misconduct). Accordingly, Brenner's request for habeas relief is **DENIED**. (Doc. 1).

### 3. The prosecutor's statements regarding Ashley were not prosecutorial misconduct.

Next, Brenner asserts that Attorney Sembrot was ineffective for failing to object to several of the prosecution's statements during closing arguments regarding Ashley, an eyewitness who testified that Brenner was not the shooter. (Doc. 1, ¶¶ 314-28). Brenner first avers that the prosecution falsely claimed that Ashley was "sitting on her porch watching Jeffrey Mable dodge bullets." (Doc. 1, ¶ 314). According to Brenner, this statement was false because Ashley testified that she dove into her home and slammed the door upon hearing the first shot, so she could not have seen Mable dodging bullets. (Doc. 1, ¶¶ 315-16). Brenner also avers that the prosecution falsely insinuated that Ashley indicated she believed Mable was the shooter's target when other evidence established that Ashley did not believe Mable was the target. (Doc. 1, ¶ 318). Brenner further argues that the prosecution falsely claimed Ashley saw Burns run past her when Ashley's testimony contradicted this. (Doc. 1, ¶¶ 319-21). Brenner

next posits that the prosecution falsely stated Ashley "had Anna Witter between her and the shooter" when Ashley's testimony also contradicted this. (Doc. 1, ¶¶ 322-26). Finally, Brenner avers that the prosecution falsely claimed Ashley pretended not to know Brenner when Ashley testified that she had known him for years. (Doc. 1, ¶ 327-28).

The Court of Common Pleas concluded that the prosecution's statements were permissible because the prosecution was asking the jury to make reasonable inferences based on inconsistent evidence and testimony. (Doc. 1-3, at 64). Regarding Ashley seeing Mable dodge bullets, the court found that Ashley's testimony was inconsistent regarding how many shots she heard and what she saw, so the prosecution was asking the jury to make an inference regarding what Ashley saw. (Doc. 1-3, at 64). Regarding the prosecution's insinuation that Ashley believed Mable was the shooter's target, the court determined that the prosecution was requesting the jury make an inference that Ashley had identified Mable as the shooter's target based on the evidence, such as Fetrow's testimony that Ashley identified Mable as the shooter's target. (Doc. 1-3, at 65). Similarly, the court concluded that whether Ashley saw Burns run past her was dependent on differing interpretations of various testimony, and thus, the prosecution could reasonably ask the jury to infer that Ashley saw Burns run past her. (Doc. 1-3, at 66). The court further determined that Ashley's testimony was muddled and hard to follow regarding who was located where and when, and because of this, the prosecution could reasonably ask the jury to infer that Witter was between Ashley and the shooter. (Doc. 1-3, at 68-69). Finally, the court concluded that the prosecution's statements regarding Ashley not knowing Brenner were permissible because while Ashley testified that she knew Brenner, she also indicated that she did not know him well, and as such, the prosecution's closing statement was asking the jury to make a reasonable inference regarding

Ashley's honesty. (Doc. 1-3, at 69-70). The Superior Court agreed that the prosecution's statements were all permissibly asking the jury to make reasonable inferences regarding factual disputes and found Attorney Sembrot was not ineffective for failing to object. *Brenner,* 2021 WL 1978962, at \*17.

Once more, the Court finds that the PCRA courts' opinions are not unreasonable applications of clearly established federal law or unreasonable determinations of fact. (Doc. 1-3, at 63-70); *Brenner,* 2021 WL 1978962, at \*16-17. As discussed *supra* Section IV.F.1, "a prosecutor 'is entitled to considerable latitude' and may ask the jury to make 'any reasonable inferences that can be drawn from the evidence.'" *Elwell,* 515 F. App'x at 163 (quoting *Werme,* 939 F.2d at 116). As noted by the PCRA courts, there were factual disputes regarding Ashley's testimony. (Doc. 1-3, at 64-70). The PCRA courts were thus reasonable in determining that the prosecution was permitted to ask the jury to make factual inferences regarding these disputes. (Doc. 1-3, at 63-70); *Brenner,* 2021 WL 1978962, at \*16-17. Further, The PCRA courts were reasonable for concluding objections to the prosecution's closing statements would be meritless and Attorney Sembrot was not ineffective "based on [his] failure to raise a meritless argument." *Sanders,* 165 F.3d at 253. Accordingly, Brenner's request for habeas relief is **DENIED**. (Doc. 1).

### 4. The prosecutor's statement that Valcarcel was dishonest was not prosecutorial misconduct.

Brenner further asserts that Attorney Sembrot was ineffective for failing to object to the prosecution's statement that Valcarcel, an eyewitness who testified that the shooter did not resemble Brenner, "couldn't tell the truth if his life depended on it." (Doc. 1, ¶¶ 329-32). According to Brenner, the prosecutor impermissibly expressed a personal belief about the credibility of Valcarcel. (Doc. 1, ¶¶ 330-32).

The Court of Common Pleas held that the prosecution's statement was proper because it was made in the context of the prosecution discussing inconsistent statements by Valcarcel, and the prosecution was permitted to ask the jury to infer that Valcarcel was being dishonest. (Doc. 1-3, at 72-73). The court further found that because the statement was proper, Attorney Sembrot was not ineffective for failing to object to it. (Doc. 1-3, at 73). The Superior Court agreed. *Brenner*, 2021 WL 1978962, at *18.

The Court once again finds that the PCRA courts' opinions are not unreasonable applications of clearly established federal law or unreasonable determinations of fact. (Doc. 1-3, at 72-73); *Brenner*, 2021 WL 1978962, at *17-18. A prosecutor is permitted "to ask the jury to draw a reasonable inference from the evidence. . . that [one of the defense's witnesses] was not a credible witness." *United States v. Earp*, 84 F. App'x 228, 236 (3d Cir. 2004). The PCRA courts were thus reasonable in determining that the prosecution was permitted to ask the jury to infer Valcarcel was dishonest, and thus not credible, based on his inconsistent statements. (Doc. 1-3, at 72-73); *Brenner*, 2021 WL 1978962, at *17-18. Further, because the PCRA courts concluded the proposed objections were without merit, they were further reasonable in concluding Attorney Sembrot was not ineffective "based on [his] failure to raise a meritless argument." *Sanders*, 165 F.3d at 253. Accordingly, Brenner's request for habeas relief is **DENIED**. (Doc. 1).

### 5. The prosecutor's statements regarding Brenner were not prosecutorial misconduct.

Brenner finally asserts that Attorney Sembrot was ineffective for failing to object to the prosecution's statement that "Ian[] Brenner's conduct was the direct cause of the death of three innocent people[. . .] Ian Brenner is about as cold a killer as there exists." (Doc. 1, ¶¶ 333-37). According to Brenner, only one person died from the shooting, so this statement is

false. (Doc. 1, ¶ 336). Further, Brenner avers that the prosecution's description of Brenner as "about as cold a killer as there exists" was impermissibly based on the prosecution's personal beliefs and was inherently prejudicial. (Doc. 1, ¶¶ 333-37).

Regarding the prosecution's misstatement that Brenner killed three people, the Court of Common Pleas concluded that in the context of the prosecutor's complete statement, the misstatement was minor and nonprejudicial, so it could not have constituted prosecutorial misconduct. (Doc. 1-3, at 74). The prosecutor's statement discussed killing *and harming* three people, and the court found the prosecutor misspoke when he stated three people had died. (Doc. 1-3, at 74). Turning to the prosecution's statement that Brenner was "about as cold a killer as there exists," the court determined that the statement was permissible because the comment spoke to the *mens rea* requirement of Brenner's criminal charge and was based on the facts of the case. (Doc. 1-3, at 76-77). (citing *Com. v. Clancy*, 648 Pa. 179, 219 (2018)). The court found that "as cold a killer as there exists" spoke to the intent requirement of Brenner's first-degree murder charge. (Doc. 1-3, at 77). The court further found that the prosecution's comment related to the facts of the case because the prosecution's full statement also referred to the shooter firing wildly into a crowd of people. (Doc. 1-3, at 77). Accordingly, the court determined that the prosecution's statement was not prosecutorial misconduct and Attorney Sembrot was not ineffective. (Doc. 1-3, at 77). The Superior Court agreed. *Brenner*, 2021 WL 1978962, at *19.

As before, the Court concludes that the PCRA courts' opinions are not unreasonable applications of clearly established federal law or unreasonable determinations of fact. (Doc. 1-3, at 74-78); *Brenner*, 2021 WL 1978962, at *18-19. Beginning with the misstatement that three people had died, as discussed *supra* Section IV.F.2*,* a minor misstatement of fact is not

so prejudicial as to constitute prosecutorial misconduct where the jury was instructed that closing arguments are not evidence. *See Donnelly*, 416 U.S. at 644. As such, the PCRA courts reasonably concluded that the prosecution's misstatement was not sufficiently prejudicial to constitute prosecutorial misconduct, given the jury instruction and extensive references in the trial record to there being only one death. (Doc. 1-3, at 74). Further, because Brenner failed to "establish[] the requisite prejudice" to constitute prosecutorial misconduct, the PCRA courts reasonably concluded Brenner "thus cannot show that counsel was ineffective for failing to object to the prosecutor's closing arguments." *Alexander*, 163 F. App'x at 173.

The Court also finds that the PCRA courts reasonably concluded that Attorney Sembrot was not ineffective for failing to object to the prosecution's characterization of Brenner as "about as cold a killer as there exists." (Doc. 1-3, at 74-78); *Brenner*, 2021 WL 1978962, at *18-19. As discussed *supra* Section IV.F.2, "a prosecutor 'is entitled to considerable latitude' and may ask the jury to make 'any reasonable inferences that can be drawn from the evidence.'" *Elwell*, 515 F. App'x at 163 (quoting *Werme*, 939 F.2d at 116). Here, the PCRA courts reasonably concluded that the prosecution was permissibly asking the jury to make a reasonable inference based on the evidence that Brenner had a sufficient *mens rea* to be convicted of first-degree murder. *Brenner*, 2021 WL 1978962, at *19. Further, the PCRA courts reasonably concluded that Attorney Sembrot was not ineffective for failing to object to the statement because counsel is not ineffective "based on [his] failure to raise a meritless argument." *Sanders*, 165 F.3d at 253. Thus, Brenner's request for habeas relief is **DENIED**. (Doc. 1).

### 6. The PCRA Courts reasonably found a lack of prejudice.

Brenner challenges the PCRA courts' overall prosecutorial misconduct findings by arguing that the PCRA courts improperly "analyzed the [prosecution's closing] statements in isolation [which was] a clearly unreasonable application of governing federal precedent concerning prosecutorial misconduct and due process." (Doc. 21, at 78). According to Brenner, the PCRA courts unreasonably applied clearly established federal law "[b]y parsing out each instance of prosecutorial misconduct. . . [and not] consider[ing] the cumulative impact of the myriad [of] misstatements." (Doc. 21, at 78).

The Court disagrees with Brenner's analysis and finds that the PCRA courts did not unreasonably apply Supreme Court precedent in such a way that "there is no possibility fair[-]minded jurists could disagree." *Harrington*, 562 U.S. at 102. The Supreme Court has established that for a conviction to be overturned, a prosecution's misstatements during closing arguments must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly*, 416 U.S. at 643. A minor misstatement of fact is not sufficiently prejudicial where the jury was clearly instructed not to consider closing arguments as evidence. *Donnelly*, 416 U.S. at 644. Here, as discussed *supra* Sections IV.F.1-5, the PCRA courts reasonably concluded that most of the challenged statements were reasonable requests for the jury to draw inferences based on the evidence. The only relevant misstatements of fact were that Snyder-Johnson volunteered Brenner's name and that the prosecution stated three people died instead of one. (Doc. 1-3, at 57-78); *Brenner*, 2021 WL 1978962, at *15-19. It was not unreasonable for the PCRA courts to conclude that these passing misstatements of fact, even when considered together, were not so prejudicial as to "infect the trial with unfairness as to make the resulting conviction a denial of due process" considering that the jury was instructed not to consider these misstatements as evidence and

the misstatements were contradicted throughout the trial. *Donnelly*, 416 U.S. at 643.

Accordingly, Brenner's sixth claim for habeas relief is **DENIED**. (Doc. 1).

        G.      The PCRA Courts reasonably determined counsel was not ineffective in failing to present additional photographs of the crime scene.

Brenner's seventh claim for habeas relief asserts that Attorney Sembrot was ineffective in failing to introduce photographic evidence of the crime scene, which would have undermined the prosecution's assertions that the crime scene was well lit enough for eyewitnesses to identify Brenner. (Doc. 1, ¶¶ 99, 346-59).

The Court of Common Pleas held that this claim lacked arguable merit because there were already photos of the crime scene showing the lighting that were introduced at trial, and various witnesses testified regarding the lighting at the crime scene. (Doc. 1-3, at 55-56). The court also concluded that additional photos were unlikely to lead to a substantially greater chance of success because the photos proposed by PCRA counsel showed "adequate to good nighttime lighting" and because photos generally portray lighting as darker than it appears in person. (Doc. 1-3, at 56-57). Finally, the court concluded Attorney Sembrot's failure to introduce these photos did not prejudice Brenner. (Doc. 1-3, at 57). The Superior Court affirmed, noting that the jury did see photos of the crime scene, most witnesses testified that the lighting conditions were good, and that the admission of "additional photographs would have been unnecessarily cumulative." *Brenner*, 2021 WL 1978962, at *21-22.

The Court again finds that the PCRA courts' opinions are not unreasonable applications of clearly established federal law or unreasonable determinations of fact. (Doc. 1-3, at 55-57); *Brenner*, 2021 WL 1978962, at *21-22. Habeas courts defer to PCRA court determinations that additional evidence would have been cumulative and that counsel was

not ineffective for failing to introduce cumulative evidence. *See Brown*, 663 F.3d at 631 (stating "it was not unreasonable for the Pennsylvania Superior Court to conclude that there was no prejudice under *Strickland* because the excluded testimony would have been 'merely cumulative'"). The PCRA courts found that the jury heard testimony regarding the lighting at the crime scene and saw photos of the lighting at the crime scene. *Brenner*, 2021 WL 1978962, at *21-22. Thus, the PCRA courts reasonably determined that the additional photos of the lighting would have been cumulative, and Attorney Sembrot was not ineffective for failing to introduce them. *See Brown*, 663 F.3d at 631. As such, Brenner's seventh claim for habeas corpus is **DENIED**. (Doc. 1).

H.    The PCRA Courts reasonably determined Brenner was not prejudiced by cumulative error.

Finally, Brenner's eighth claim for habeas relief asserts that all of his ineffective assistance of counsel claims are of arguable merit and the cumulative effect of these errors shows clear prejudice to Brenner. (Doc. 1, ¶¶ 99, 360-78). Brenner further argues that even if this Court accepts the PCRA courts' determinations that certain claims lack arguable merit, the PCRA courts determined that Brenner's claims regarding Burns' prior testimony, failure to call an expert on eyewitness identification, the cross-examination of Fetrow, and failure to present evidence of legal gun ownership all had arguable merit and collectively prejudiced Brenner. (Doc. 1, ¶ 361).

The Court of Common Pleas rejected Brenner's cumulative error claim, finding that cumulative prejudice was insufficient to find ineffective assistance of counsel. (Doc. 1-3, at 97-98). The Superior Court agreed. *Brenner*, 2021 WL 1978962, at *25. Contrary to Brenner's assertions, the Superior Court determined that neither Attorney Keenheel nor Attorney Sembrot was ineffective regarding Burns's testimony. *Brenner*, 2021 WL 1978962, at *6

(stating "since Appellant has failed to establish that Attorney Keenheel's cross-examination of Burns was constitutionally ineffective, Attorney Sembrot cannot be held ineffective for waiving this claim by failing to pursue it in Appellant's original PCRA petition"). The Superior Court also found that Attorney Sembrot's failure to present evidence of legal gun ownership was a reasonable strategy, and thus, the ineffective assistance of counsel claim lacked arguable merit. *Brenner*, 2021 WL 1978962, at *13 (stating "[s]ince Attorney Sembrot's decision was based upon a reasonable strategy to effectuate Appellant's interests, this claim fails"). According to the Superior Court, the only claims with arguable merit relevant to this petition were Attorney Sembrot's failure to call an expert on eyewitness identification and Attorney Sembrot's cross-examination of Fetrow. *Brenner*, 2021 WL 1978962, at *8-13. The Court also notes that the Superior Court found the introduction of Schwoeble's report was in error, but nonprejudicial. *Brenner*, 2021 WL 1978962, at *9. The Superior Court concluded that cumulative error did not sufficiently prejudice Brenner. *Brenner*, 2021 WL 1978962, at *25.

The Court finds that the PCRA courts reasonably determined that cumulative error did not prejudice Brenner. (Doc. 1-3, at 97-98); *Brenner*, 2021 WL 1978962, at *25. As an initial matter, "[t]here is some debate. . . as to whether cumulative error claims constitute clearly established federal law as determined by the Supreme Court for the purposes of deference under AEDPA." *Saranchak v. Sec'y, Pa. Dep't of Corr.*, 802 F.3d 579, 590 (3d Cir. 2015). However, assuming that cumulative error claims are clearly established law, "'a cumulative-error analysis merely aggregates all the errors that individually have been found to be harmless, and therefore not reversible' to determine whether together 'they had a

substantial and injurious effect or influence in determining the jury's verdict.'" *Saranchak*, 802 F.3d at 590 (quoting *Albrecht v. Horn*, 485 F.3d 103, 139 (3d Cir. 2007)).

When assessing cumulative error, courts consider if errors compound each to create additional prejudice. *See United States v. Greenspan*, 923 F.3d 138, 155 (3d Cir. 2019). Here, both Attorney Sembrot's failure to call an expert on eyewitness identification and Attorney Sembrot's failure to question Fetrow regarding Burns's uncharged drug offenses relate to the same issue: the credibility of Burns's identification of Brenner as the shooter. *Brenner*, 2021 WL 1978962, at *8, 11. However, the PCRA courts reasonably concluded that the credibility of Burns's identification was already undermined, and it was not unreasonable for the PCRA courts to conclude that "the result would [not] have been different had [Attorney Sembrot] further attacked [Burns]'s credibility." *Green*, 493 F. Supp. 3d at 312; *see also Varner*, 2024 WL 3204472, at *12. Therefore, the PCRA courts reasonably concluded that these claims provided little prejudicial effect. (Doc. 1-3, at 97-98); *Brenner*, 2021 WL 1978962, at *25.

Attorney Sembrot's failure to question Fetrow regarding the risk of contamination and the introduction of Schwoeble's report are related in that they both speak to the credibility of the expert forensic evidence. *Brenner*, 2021 WL 1978962, at *9-10, 13. However, as discussed *supra* Section IV.D, the PCRA courts reasonably concluded the introduction of Schwoeble's testimony did not prejudice Brenner because Murtha's testimony and report were admissible, and Schwoeble's report was cumulative of that evidence. *Brenner*, 2021 WL 1978962, at *10. The PCRA courts also reasonably concluded that Attorney Sembrot's failure to cross-examine Fetrow regarding the sweatshirt and contamination was not prejudicial because the jury was already informed of the risk of contamination and the sweatshirt's minimal evidentiary value. *Brenner*, 2021 WL 1978962, at *11-13. Considering these claims together,

the Court cannot find that the PCRA courts' "prejudice determination was objectively unreasonable." *Segraves v. Dist. Att'y of Lycoming Cnty.*, No. 20-1997, 2022 WL 1486772, at *2 (3d Cir. May 11, 2022) (nonprecedential). This is because both failing to admit and admitting cumulative evidence can be reasonably determined to be nonprejudicial. *See Brown,* 663 F.3d at 63 (finding excluding cumulative testimony was non-prejudicial); *cf Fogg,* 579 F. Supp. 2d at 610 (finding erroneously admitting cumulative evidence was harmless error). The PCRA courts reasonably concluded that cumulative error did not sufficiently prejudice Brenner. (Doc. 1-3, at 97-98); *Brenner,* 2021 WL 1978962, at *25. As such, Brenner's seventh claim for habeas corpus is **DENIED**. (Doc. 1).

## V.    CERTIFICATE OF APPEALABILITY

AEDPA codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. It provides that "[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from. . . the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court[.]" 28 U.S.C. § 2253(c)(1)(A). It also provides that "[a] certificate of appealability may issue…only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

When the district court has rejected a constitutional claim on its merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). Applying that standard here, reasonable jurists would not find the Court's assessment debatable or wrong for the reasons given herein. Accordingly, the Court will not issue a certificate of appealability.

**VI.    CONCLUSION**

For the foregoing reasons, Brenner's Petition for Writ of Habeas Corpus in this case is

**DENIED** (Doc. 1) and the Court will not issue a certificate of appealability. The Clerk of

Court is directed to **CLOSE** this matter.

An appropriate Order follows.

Dated: September 30, 2025                              *s/ Karoline Mehalchick*
                                                      **KAROLINE MEHALCHICK**
                                                      **United States District Judge**